03 - 4201 - LSS

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

> FILED
> IN OPEN COURT
>
> OCT 3 0 2003
>
> CLERK, U.S. DISTRICT COURT
> ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO. 03-530-A |
| | ) |
| v. | ) Count 1:  Conspiracy |
| | ) 21 U.S.C. § 846 |
| VINEET K. CHHABRA, | ) |
| (a.k.a. VINCENT K. CHHABRA) | ) Count 2:  Continuing Criminal |
| | ) Enterprise |
| DANIEL L. THOMPSON, | ) 21 U.S.C. § 848(a) and (c) |
| | ) |
| SABINA S. FARUQUI, | ) Counts 3-42:  Unlawful Distribution and |
| (a.k.a. SABINA K. CHHABRA) | ) Dispensing of Controlled Substances |
| | ) 21 U.S.C. § 841(a)(1), 841(b)(1)(D), |
| JAMES A. TROVATO, JR., | ) 841(b)(2) & 21 C.F.R. § 1306.04 |
| | ) |
| SUNIL K. SETHI, | ) Count 43:  Conspiracy to Launder |
| | ) Money |
| DANIEL M. VARALLI, | ) 18 U.S.C. § 1956(h) |
| | ) |
| WILLIAM D. THOMPSON, | ) Counts 44-82:  Promotional Money |
| | ) Laundering |
| LAURENCE L. COCKERILLE, JR., | ) 18 U.S.C. § 1956(a)(1)(A)(i) |
| | ) |
| ARTURO L. PORTALES, | ) Counts 83-99:  Transactional Money |
| | ) Laundering |
| RUSSELL A. JOHNSON, | ) 18 U.S.C. § 1957 |
| | ) |
| USA PRESCRIPTION, INC., | ) Counts 100-108:  Introduction of |
| | ) Misbranded Drugs into Interstate |
| CHHABRA GROUP, LLC, and | ) Commerce |
| | ) 21 U.S.C. §§ 331(a), 333(a)(2), 352(a) |
| VKC CONSULTING, LLC, | ) |
| | ) Criminal Forfeiture |
| Defendants. | ) 18 U.S.C. § 982(a)(1) & (b); |
| | ) 21 U.S.C. § 853 |

## INDICTMENT

October 2003 Term - at Alexandria

## THE GRAND JURY CHARGES THAT:

### INTRODUCTION

At times relevant to this Indictment:

### CONTROLLED SUBSTANCES ACT

1. The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2. Various prescription drugs were scheduled substances under the Controlled Substances Act. There were five schedules of controlled substances – schedules I, II, III, IV, and V. Drugs were scheduled into these levels based on their potentiality for abuse, among other things. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. Abuse of Schedule IV drugs may lead to more limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. 21 U.S.C. § 812(b)(3) and (4).

3. Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person, knowingly filling such a purported prescription, as well as the

-2-

person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. Phendimetrazine, a stimulant, was classified under federal narcotics laws as a Schedule III controlled substance. 21 C.F.R. § 1308.13(b)(5). Bontril was a prescription drug used for weight loss that contained phendimetrazine, and was therefore classified as a Schedule III controlled substance.

5. Phentermine, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(9). Ionamin, Adipex-P, Teramine, and Fastin were brand names for prescription drugs used for weight loss that contained Phentermine, and were therefore classified as Schedule IV controlled substances.

6. Sibutramine hydrochloride, a stimulant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e)(11). Meridia, a prescription drug used for weight loss, contained sibutramine hydrochloride, and was therefore classified as a Schedule IV controlled substance.

7. Zolpidem tartrate, a depressant, was classified under federal narcotics laws as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c)(50). Ambien, a prescription drug used for insomnia, contained zolpidem tartrate, and was therefore classified as a Schedule IV controlled substance.

## THE FEDERAL FOOD, DRUG, AND COSMETIC ACT

8. The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for

their intended uses and bore labeling containing true and accurate information. FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

9. FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 301 et. seq.

10. Under the FD&C Act, the term "drug" included articles which were (1) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (2) intended to affect the structure or any function of the body of man. 21 U.S.C. § 321(g)(1)(B) and (C).

11. Some of the drugs regulated under the FD&C Act were "prescription drugs." "Prescription drugs" were those drugs, which because of their toxicity or other potential harmful effects, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drug as a condition of FDA approving the drug to be placed on the market. 21 U.S.C. § 353(b)(l)(A) and (B).

12. Viagra (Sildenafil citrate) was indicated for the treatment of erectile dysfunction, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

13. Xenical (Orlistat) was indicated for weight loss, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

14. Celebrex (Celecoxib) was indicated for treatment of osteoarthritis and rheumatoid arthritis, and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).

15. Phendimetrazine (Bontril), Phentermine (e.g. Ionamin, Adipex-P, Fastin), Sibutramine hydrochloride (Meridia), and Zolpidem tartrate (Ambien) described as controlled substances in paragraphs 4-7 above, were also prescription drugs within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B).

16. The FD&C Act prohibited the introduction or delivery for introduction into interstate commerce, or the causing of such introduction or delivery, of any drug that was misbranded. 21 U.S.C. § 331(a).

17. A drug was misbranded if its labeling was false or misleading in any particular. 21 U.S.C. § 352(a).

## STATE LAWS

18. An example of some state laws which imposed requirements upon doctors and healthcare professionals to take certain steps before they could prescribe, distribute, or dispense controlled substances included:

### Virginia Law

19. Virginia law prohibited a physician from prescribing anorectic drugs (drugs that suppress appetite) for weight reduction or control unless the following conditions were met:

(1)  a comprehensive history, physical examination, and interpreted electrocardiogram were performed and recorded at the time of initiation of treatment for obesity by the prescribing physician;

(2)  a diet and exercise program for weight loss was prescribed and recorded;

(3)  the patient was weighed at least once a month, at which time records were made of blood pressure, pulse, and any other tests as may be necessary for monitoring potential adverse effects of drug therapy;

(4)  no more than a 30-day supply of such drugs could be prescribed or dispensed at any one time;

(5)  no such drugs could be prescribed or dispensed for more than 90 days unless the patient:

    (a)    had a recorded weight loss of at least 12 pounds in the first
            90 days of therapy;

    (b)    had continued progress toward achieving or maintaining a
            target weight; and

    (c)    had no significant adverse effects from the prescribed
            program.

18 Va. Admin. Code § 85-20-90 (1996).

20. Virginia law stated that a practitioner of medicine could only prescribe, dispense, or administer controlled substances in good faith for medicinal or therapeutic purposes within the course of professional practice. Va. Code Ann. § 54.1-3408 (1983).

21. "Controlled substance" as defined under Virginia law included, but was not limited to: Phentermine, Bontril, Meridia, Ionamin, Adipex-P, Teramine, and Fastin. Va. Code Ann. § 54.1-2519.

22. Virginia law stated, in part, that a physician engaged in unprofessional conduct if the physician:

    (1)    prescribed or dispensed any controlled substance with intent or knowledge that it would be used otherwise than medicinally, or for accepted therapeutic purposes, or with intent to evade any law with respect to the sale, use or disposition of such drug;

    (2)    conducted his or her practice in a manner contrary to the standards of ethics of the physician's branch of the healing arts;

    (3)    conducted his or her practice in such a manner as to be a danger to the health and welfare of patients or to the public;

    (4)    performed any act likely to deceive, defraud, or harm the public;

    (5)    violated any provision of a statute or regulation, state or federal, relating to the manufacture, distribution, dispensing or administration of drugs; or

    (6)    violated or cooperated with others in violating any of the provisions of Virginia law dealing with medicine and other healing arts.

Va. Code Ann. § 54.1-2914 (1979).

23. Virginia law stated that a prescription for a drug could only be issued for a medicinal

-6-

or therapeutic purpose to persons with whom the practitioner had a bona fide practitioner-patient relationship. Effective July 1, 2000, the definition of bona fide practitioner-patient relationship was clarified. The clarification required that to form a bona fide practitioner-patient relationship, the practitioner was required to:

(1)  ensure that a medical or drug history was obtained;
(2)  provide information to the patient about the benefits and risks of the drug being prescribed;
(3)  perform or have performed an appropriate examination of the patient, either physically or by the use of instrumentation and diagnostic equipment through which images and medical records could have been transmitted electronically; and
(4)  initiate additional interventions and follow-up care, if necessary.

Va. Code Ann. § 54.1-3303.

24. Virginia law also required that a prescription could not be filled by a pharmacist unless there was a bona fide practitioner-patient-pharmacist relationship. A bona fide practitioner-patient-pharmacist relationship was one in which a practitioner prescribes, and a pharmacist dispenses, controlled substances in good faith to the patient for a medicinal or therapeutic purpose within the course of professional practice. Va. Code Ann. § 54.1-3303 (1983).

25. A pharmacy in Virginia could dispense a prescription authorized by an out-of-state practitioner of medicine only if the prescription complied with the requirements discussed in paragraphs 23 and 24. Va. Code Ann. § 54.1-3303.

26. Virginia law also required a non-resident pharmacy to register with the Virginia Board of Pharmacy if it shipped, mailed, or delivered prescription drugs into the Commonwealth of Virginia. Va. Code Ann. § 54.1-3434.1. Effective July 1, 2000, each non-resident pharmacy,

in its registration with the Virginia Board of Pharmacy had to disclose, among other things, that

its pharmacists did not knowingly fill or dispense a prescription for a patient in Virginia in

violation of the law discussed in paragraphs 23 and 24. Va. Code Ann. § 54.1-3434.1(A)(4).

### Ohio Law

27. As of October 31, 1998, Ohio law required, among other things, that before initiating

treatment for weight loss using any Schedule III or IV controlled substance a physician was

required to, among other things: (1) ensure that a patient had made a substantial good-faith effort

to lose weight in a treatment program utilizing a regimen of weight reduction based on caloric

restriction, nutritional counseling, behavior modification, and exercise, without the utilization of

controlled substances and that this treatment had been ineffective; (2) obtain a thorough history;

(3) perform a thorough physical examination; (4) assess that a patient is free from signs of drug

or alcohol abuse; (5) determine that the patient had a Body Mass Index of at least thirty, or at

least twenty-seven with comorbid factors, and (6) rule out contraindications. Ohio Admin. Code

§ 4731-11-04. Body mass index (BMI) is an index used for relating body weight to height. The

BMI is a person's weight in kilograms divided by his or her height in meters squared. A person

has "comorbid factors" when a person suffers from certain diseases in addition to obesity.

28. Effective October 31, 1998, among other things, Ohio law required that, at a

minimum, a physician meet face-to-face with a patient every 30 days when controlled substances

were used for weight reduction, and that the physician record information demonstrating a

patient's continuing efforts to lose weight, response to the treatment, and possible substance

abuse. If FDA-approved labeling of the controlled substance stated that it was indicated for use

for a "few weeks," the total course of treatment using that controlled substance could not exceed

twelve weeks.  Ohio Admin. Code § 4731-11-04.

29.  Effective October 1, 1999, Ohio law prohibited a physician from prescribing, dispensing, or otherwise providing, or causing to be provided, any controlled substances to a person whom the physician had never personally physically examined and diagnosed.  Ohio Admin. Code § 4731-11-09.  This law also prohibited a physician from prescribing, dispensing, or otherwise providing, or causing to be provided, any prescription-only drug (as defined under federal law) to a person whom the physician had never physically examined and diagnosed, unless the following requirements were met:  (1) the physician was providing care in consultation with another physician who has an ongoing professional relationship with the patient, and who agreed to supervise the patient's use of the drugs to be provided; and (2) the physician's care of the patient met all applicable standards of care and all applicable statutory and regulatory requirements.  Ohio Admin. Code § 4731-11-09.

## Florida Law

30.  Florida law required, among other things, that an initial evaluation of a patient had to be conducted prior to the prescribing, ordering, dispensing, or administering of any prescription obesity drug.  Florida law required that such evaluation had to include, among other things: (1) an appropriate physical and complete history; and (2) appropriate tests related to medical treatment for weight loss.  Fla. Admin. Code Ann. r. 64B8-9.012 (1997).

31.  Florida law required that prescriptions for any weight loss drug had to be in writing and signed by the prescribing physician, and prohibited initial prescriptions for these types of drugs from being called into a pharmacy by a physician or the physician's agent.  Fla. Admin. Code Ann. r. 64B8-9.012 (1997).

32. Florida law further required that at the time of delivering the initial prescription or providing the initial supply of such drugs to a patient, the prescribing physician had to personally meet with the patient and personally obtain an appropriate written informed consent from the patient. Such consent had to state that there was a lack of scientific data regarding the potential danger of long term use of combination weight loss treatments, and had to discuss potential benefits versus potential risks of weight loss treatments. The written consent also had to clearly state the need for dietary intervention and physical exercise as part of any weight loss regimen. A copy of the signed informed consent had to be included in the patient's permanent medical record. Fla. Admin. Code Ann. r. 64B8-9.012 (1997).

33. Florida law also required that each physician who was prescribing, ordering, or providing prescription weight loss drugs to patients had to assure that such patients undergo an in-person re-evaluation within two to four weeks of receiving a prescription, order, or dosage. The re-evaluation had to include the elements of the initial evaluation described in paragraph 30 and an assessment of the medical effects of the treatment being provided. Florida law also required that any patient that continued on a drug-assisted weight loss program had to be re-evaluated at least once every three months. Fla. Admin. Code Ann. r. 64B8-9.012 (1997).

## DEFENDANTS

34. Defendant VINEET K. CHHABRA, also known as VINCENT K. CHHABRA (hereinafter "VINCENT K. CHHABRA"), was an owner, operator, corporate officer and/or director, of businesses that operated websites and toll-free telephone numbers through which defendants distributed and dispensed controlled substances, and laundered the proceeds thereof. Some of these businesses included: Medisource Medical Centers; Next Generation Health

-10-

Systems, Inc.; ID Limited; DVM Enterprises, Inc.; e Prescription Global Limited; T.A.C.E., LLC; JavinTech, LLC; Lortan Limited, LLC; MedPrescribe, Inc.; ePrescribe, Inc.; Safewebmedical, Inc.; Giant Pharmaceuticals, LLC; Prescription Resources, Inc.; SV Enterprises; Chhabra Investment Group, LLC; defendant VKC CONSULTING, LLC; MVC Holdings; MAC Investments, LLC; defendant USA PRESCRIPTION, INC.; and defendant CHHABRA GROUP, LLC.  Defendant VINCENT K. CHHABRA was the President and Director of defendant USA PRESCRIPTION, INC., President and Chief Executive Officer (CEO) of defendant CHHABRA GROUP, LLC; and Manager of defendant VKC CONSULTING, LLC.  Additionally, defendant VINCENT K. CHHABRA owned at least one pharmacy through which defendants distributed and dispensed controlled substances.

35. Defendant DANIEL L. THOMPSON was an owner and operator of businesses that operated various websites through which defendants distributed and dispensed controlled substances.  Some of these businesses included Medisource Medical Centers, ID Limited, FMEW, and DVM Enterprises, Inc.  Defendant DANIEL L. THOMPSON and defendant VINCENT K. CHHABRA owned www.get-it-on.com, www.cybrx.com, www.cybrxpress.com, www.rxclinic.com, and www.eprescribe.com.  Until August 2000, DANIEL L. THOMPSON was a physician licensed in Ohio.  Defendant DANIEL L. THOMPSON authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses.  From December 1998 through October 1999, defendant DANIEL L. THOMPSON authorized the distribution and dispensing of at least 257,504 dosage units of Schedule IV substances, which defendants sold through their Internet application process.

36. Defendant SABINA S. FARUQUI, also known as SABINA K. CHHABRA, was an

-11-

officer, manager, and operator of businesses that operated websites and toll-free telephone numbers through which defendants distributed and dispensed controlled substances, and laundered the proceeds thereof, including: MedPrescribe, Inc.; ePrescribe, Inc.; Safewebmedical, Inc.; and Giant Pharmaceuticals, LLC. Defendant SABINA S. FARUQUI was the Secretary and Treasurer of defendant USA PRESCRIPTION, INC., and Vice President of defendant CHHABRA GROUP, LLC. Defendant SABINA S. FARUQUI was the sister of defendant VINCENT K. CHHABRA.

37. Defendant SUNIL K. SETHI was an owner and operator of a pharmacy and other businesses through which defendants distributed and dispensed controlled substances, and which laundered the proceeds of drug sales, including 2U-Netmail, LLC (doing business as Choice Rx) and SV Enterprises, Inc. (doing business as ePrescribe.com, RxClinic.com, Safeweb.com, and Medicineshelf.com). Additionally, SUNIL K. SETHI was co-owner of the website www.medicineshelf.com. Defendant SUNIL K. SETHI was the uncle of defendants VINCENT K. CHHABRA and SABINA S. FARUQUI.

38. Defendant JAMES A. TROVATO, JR., was an owner and operator of businesses that operated various websites that dispensed controlled substances. Some of these businesses included Lortan Limited, LLC; JavinTech, LLC; and T.A.C.E., LLC. Defendant JAMES A. TROVATO, JR., owned these businesses with defendant VINCENT K. CHHABRA. Through these businesses, defendants operated the websites www.privacyrx.com, www.choicerx.com, and www.rxleader.com.

39. Defendant DANIEL M. VARALLI was a pharmacist licensed in the Commonwealth of Virginia and was the co-owner and pharmacist-in-charge of Rx Direct, Inc. Rx Direct, Inc.,

-12-

was one of the pharmacies through which the defendants distributed and dispensed controlled substances. From July 1999 through June 2000, Rx Direct, Inc. distributed and dispensed at least 56,250 dosage units of Schedule III substances and at least 1.3 million dosage units of Schedule IV substances, which defendants sold through their Internet application process. Defendant DANIEL M. VARALLI also was a dispensing pharmacist at Home Prescription Services, Inc., a pharmacy located in the Commonwealth of Virginia through which defendants distributed and dispensed controlled substances.

40. Defendant WILLIAM D. THOMPSON was a physician licensed in the State of Missouri. Defendant WILLIAM D. THOMPSON authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. Defendant WILLIAM D. THOMPSON's brother was defendant DANIEL L. THOMPSON. From July 1999 through October 2001, defendant WILLIAM D. THOMPSON authorized the distribution and dispensing of at least 151,680 dosage units of Schedule III substances and at least 2.75 million dosage units of Schedule IV substances, which defendants sold through their Internet application process.

41. Defendant LAURENCE L. COCKERILLE, JR., was a physician licensed and residing in the State of Ohio. Defendant LAURENCE L. COCKERILLE, JR., authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. From April 2000 through early December 2000, defendant LAURENCE L. COCKERILLE, JR., authorized the distribution and dispensing of at least 34,590 dosage units of Schedule III substances and at least 388,600 dosage units of Schedule IV substances, which defendants sold through their Internet application process.

-13-

42. Defendant ARTURO L. PORTALES was a physician licensed in the States of Arizona and Kentucky. Defendant ARTURO L. PORTALES authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. From December 1999 through October 2001, defendant ARTURO L. PORTALES authorized the distribution and dispensing and caused the distribution and dispensing of at least 62,992 dosage units of Schedule III substances and at least 1.5 million dosage units of Schedule IV substances, which defendants sold through their Internet application process.

43. Defendant RUSSELL A. JOHNSON was a physician licensed in the Commonwealth of Virginia. Defendant RUSSELL A. JOHNSON authorized his name to appear on vials of drugs distributed and dispensed by defendants to customers of the Internet businesses. From October 1999 through August 2000, defendant RUSSELL A. JOHNSON authorized the distribution and dispensing and caused the distribution and dispensing of at least 33,450 dosage units of Schedule III substances and at least 789,103 dosage units of Schedule IV substances, which defendants sold through their Internet application process.

44. Defendant USA PRESCRIPTION, INC., was a business incorporated in the State of Florida, that sold controlled substances over the Internet and through toll-free telephone numbers. It was also the domain name registrant for several websites, including www.eprescribe.com, www.medprescribe.com, www.safewebmedical.com, www.choicerx.com, www.rxleader.com, www.privacyrx.com, www.rxclinic.com, www.medicineshelf.com, www.usaprescription.com, www.clickmeds.com, and www.selectpharmacy.com.

45. Defendant CHHABRA GROUP, LLC, was a business incorporated in the State of Florida, which was involved with selling controlled substances over the Internet and through toll-

-14-

free telephone numbers, and with laundering the proceeds therefrom.

46. Defendant VKC CONSULTING, LLC, was a business incorporated in the State of Ohio through which defendants laundered the proceeds from the illegal distributing and dispensing of controlled substances.

## COUNT ONE
### (Conspiracy to Violate the Controlled Substances Act)

47. The factual allegations of paragraphs 1 through 46 above are realleged and incorporated herein by reference.

48. Beginning in or before December, 1998, the exact date being unknown, and continuing until the date of the Indictment, in the Eastern District of Virginia and elsewhere,

**VINCENT K. CHHABRA,
DANIEL L. THOMPSON,
SABINA S. FARUQUI,
SUNIL K. SETHI,
JAMES A. TROVATO, JR.,
DANIEL M. VARALLI,
WILLIAM D. THOMPSON,
LAURENCE L. COCKERILLE, JR.,
ARTURO L. PORTALES,
RUSSELL A. JOHNSON,
USA PRESCRIPTION, INC., and
CHHABRA GROUP, LLC,**

defendants herein, knowingly and intentionally conspired and agreed together, and with others known and unknown to the Grand Jury, to commit the following offenses against the United States:

(a) to distribute and dispense Schedule III and IV controlled substances, including but not limited to, quantities of the following controlled substances: (1) Phendimetrazine (brand name Bontril), a Schedule III controlled substance; (2) Phentermine (including brand names Ionamin,

-15-

Adipex-P, Teramine, and Fastin), a Schedule IV controlled substance; and (3) sibutramine

hydrochloride (brand name Meridia), a Schedule IV controlled substance, other than for a

legitimate medical purpose and not in the usual course of professional practice, in violation of

Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and 841(b)(2), and Title 21, Code

of Federal Regulations, Section 1306.04; and

(b)  to use a communication facility in committing and in causing and facilitating the

distribution and dispensing of Schedule III and IV controlled substances, including but not

limited to, quantities of the following controlled substances: (1) Phendimetrazine (brand name

Bontril), a Schedule III controlled substance; (2) Phentermine (including brand names Ionamin,

Adipex-P, Teramine, and Fastin), a Schedule IV controlled substance; and (3) sibutramine

hydrochloride (brand name Meridia), a Schedule IV controlled substance, other than for a

legitimate medical purpose and not in the usual course of professional practice, in violation of

Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), 841(b)(2), and 843(b), and Title

21, Code of Federal Regulations, Section 1306.04.

## PURPOSE OF THE CONSPIRACY

49.  It was the purpose of the conspiracy to sell, via the Internet and toll-free telephone

numbers, controlled substances to consumers in the United States and throughout the world.  To

maximize profit, defendants used mass e-mailings, advertising, pricing schemes, and other

marketing schemes to sell large quantities of controlled substances to customers through the

websites.  Defendants' process for selling drugs violated the federal requirement under the

Controlled Substances Act that controlled substances be dispensed only for a legitimate medical

purpose and in the usual course of professional medical practice.

-16-

## MANNER AND MEANS OF THE CONSPIRACY

50. It was a part of the conspiracy that defendants illegally dispensed controlled substances through several businesses using a variety of Internet websites and toll-free telephone numbers. On these websites, defendants advertised various controlled substances to domestic and international customers. Some of the controlled substances defendants offered were drugs commonly known as Bontril, Ionamin, Phentermine, Adipex, Meridia, and Ambien. Some of the customers were located in Fairfax County, Arlington County, and Fauquier County.

51. It was further part of the conspiracy that defendants did not require customers to provide a prescription before receiving the controlled substances. Instead, defendants obtained information from the customer over the Internet, using an online ordering process. In this ordering process, customers filled out an online order form and chose the type, quantity, and dosage of controlled substance the customer wished to purchase. Each customer also answered questions about his or her medical conditions. Many questions provided default answers that, if left unchanged, "qualified" customers to receive drugs. Defendants also sold controlled substances by allowing customers to call various toll-free telephone numbers and speak to a customer service representative, who completed an order form based on information provided by the customer. Often customers received discounts for buying greater quantities. No one associated with the defendants checked the accuracy of the information customers provided, including their identities, ages, and qualifying medical conditions, such as weight.

52. It was further part of the conspiracy that the websites stated that a physician would review the online or telephone order form and determine whether to authorize the distribution and dispensing of the requested drugs before defendants sent the drugs to the customers.

-17-

Physicians had no face-to-face contact with the customers, who lived throughout the United States, as well as in foreign countries. Defendants distributed and dispensed the controlled substances to customers without: an adequate patient history; performing a mental or physical exam; using appropriate diagnostic or laboratory testing; or providing a means to monitor medication response. Instead, the order form was the only contact with the customer. In many instances, there was no physician review of the order forms.

53. It was further part of the conspiracy that defendants VINCENT K. CHHABRA, SABINA S. FARUQUI, JAMES A. TROVATO, JR., SUNIL K. SETHI, and DANIEL L. THOMPSON were owners, operators, and corporate officers or directors, of the companies that operated the websites and toll-free telephone numbers through which defendants sold controlled substances.

54. It was further part of the conspiracy that defendants used mass e-mailings, advertising, pricing schemes, refill reminders, and marketing schemes to increase the quantity of controlled substances sold to customers through the websites in order to increase profits.

55. It was further part of the conspiracy that defendants DANIEL L. THOMPSON, WILLIAM D. THOMPSON, RUSSELL A. JOHNSON, ARTURO L. PORTALES, and LAURENCE L. COCKERILLE, JR., were physicians who authorized the distribution and dispensing of controlled substances, including Phentermine, Meridia, Ionamin, Bontril, and Adipex, to Internet customers. Defendants DANIEL L. THOMPSON, WILLIAM D. THOMPSON, RUSSELL A. JOHNSON, ARTURO L. PORTALES, and LAURENCE L. COCKERILLE, JR., had no face-to-face contact with these customers. The controlled substances were distributed and dispensed for other than a legitimate medical purpose and not in

-18-

the usual course of professional practice.

56. It was further part of the conspiracy that beginning in at least December 1998, and continuing until at least February 16, 1999, the exact dates being unknown to the Grand Jury, defendants VINCENT K. CHHABRA, SABINA S. FARUQUI, and DANIEL L. THOMPSON, distributed and dispensed controlled substances from an office in Ohio through www.get-it-on.com and www.cybrx.com. After the State of Ohio executed a search warrant at the Ohio office, the defendants no longer dispensed drugs from that office. Defendants thereafter continued to operate the Internet websites from other locations in Dublin and Columbus, Ohio, and dispensed drugs from pharmacies outside the State of Ohio.

57. It was further part of the conspiracy that in or about March 1999, following a search warrant executed on their offices by the State of Ohio, and in an attempt to hide their operation, defendants VINCENT K. CHHABRA, SABINA S. FARUQUI, DANIEL L. THOMPSON, and SUNIL K. SETHI, established new websites and two new corporations in Virginia, DVM Enterprises, Inc., and 2U-Netmail, LLC, through which defendants distributed and dispensed controlled substances. Until 2U-Netmail, LLC, which was intended to be a pharmacy, was operational, 2U-Netmail forwarded drug orders sold through the websites to a pharmacy in Roanoke, Virginia, and then to Rx Direct, Inc., another pharmacy in Roanoke, Virginia, which distributed and dispensed the controlled substances. Defendant SUNIL K. SETHI owned 2U-Netmail, LLC, which was located in Midlothian, Virginia, and did business as Choice Rx. Defendant DANIEL M. VARALLI was the pharmacist-in-charge of Rx Direct. Rx Direct was co-owned by defendant DANIEL M. VARALLI. After 2U-Netmail became operational, 2U-Netmail continued to forward drug orders to Rx Direct for filling.

-19-

58. It was further part of the conspiracy that after the Virginia pharmacies ceased filling prescriptions for defendants' websites, defendants continued to distribute and dispense controlled substances to Internet customers through several other pharmacies, including pharmacies in Alabama, Florida, and Louisiana.

59. It was further part of the conspiracy that defendants entered into marketing agreements with persons and entities known and unknown to the grand jury, in order to increase sales of controlled substances. These marketing arrangements were known as "affiliate" or "partner" programs. A person who became an "affiliate" or "partner" could earn commissions on sales generated from customers who linked to defendants' websites through another website.

60. It was further part of the conspiracy that in order to increase the amount of drugs distributed and dispensed to individual customers, defendants simultaneously used two or more pharmacies, some of which were dedicated solely to distributing and dispensing controlled substances for defendants' businesses.

61. It was further part of the conspiracy that defendants distributed and dispensed large quantities of controlled substances to individual website customers. Defendants overdistributed to customers even when a dispensing pharmacy associated with the websites refused to fill a "prescription" because the pharmacy had recently filled another "prescription" for that customer, and determined that the customer should not have more drugs. In many such instances when a pharmacy refused to fill a "prescription," defendants overrode the dispensing pharmacist's professional judgment and sent the rejected prescription to another pharmacy for dispensing. Defendants did not notify either the second pharmacy or the doctor who authorized the drugs to be distributed that the customer had a sufficient supply of drugs. In many instances, the second

pharmacy would fill the prescription.

62. It was further part of the conspiracy that, in other cases, defendants falsely and misleadingly represented the identity of the "prescribing physician" on the label of the controlled substances because the physician who had actually reviewed the online questionnaire had entered into an agreement with his medical licensing board not to prescribe drugs via the Internet without performing a complete physical examination or obtaining complete medical histories of the customer.

63. It was further part of the conspiracy that, to avoid regulatory and law enforcement officials, in some instances, defendants purposefully avoided allowing a physician to authorize the dispensing of controlled substances to customers in states in which the physician was licensed, but instead authorized the dispensing of controlled substances to customers in states in which the physician was not licensed.

64. It was further a part of the conspiracy that the fulfilling pharmacies would distribute and dispense excessive quantities of controlled substances to customers even though it was apparent the customer was ordering drugs through several different websites and through several different Internet-related doctors.

65. It was further part of the conspiracy that defendants received payment for controlled substance drug orders from customers in various ways, including by credit cards and money orders.

66. It was further part of the conspiracy that some of the companies through which defendants distributed and dispensed controlled substances included: Medisource Medical Centers; ID Limited; Next Generation Health Systems; DVM Enterprises, Inc.; Lortan Limited,

LLC; JavinTech, LLC; and T.A.C.E., LLC; Safewebmedical, Inc.; ePrescribe, Inc.;

MedPrescribe, Inc.; defendant USA PRESCRIPTION, INC.; and defendant CHHABRA

GROUP, LLC.

67. It was further part of the conspiracy that some of the websites through which

defendants distributed and dispensed controlled substances included: www.get-it-on.com;

www.cybrx.com; www.cybrxpress.com; www.rxclinic.com; www.eprescribe.com;

www.privacyrx.com; www.choicerx.com; www.rxleader.com; www.medprescribe.com;

www.safewebmedical.com, www.medicineshelf.com; www.adipex.com; www.clickmeds.com;

www.clickprescribe.com; www.selectpharmacy.com; and www.usaprescription.com.

68. It was further part of the conspiracy that from the time period of December 1998,

until October 2001, defendants distributed and dispensed through their Internet application

process at least 282,712 dosage units of Schedule III substances and at least 5.6 million dosage

units of Schedule IV substances on the basis of the authorizations of the physicians associated

with the websites.

69. It was further part of the conspiracy that from on or about December 1998, the exact

date being unknown to the Grand Jury, until at least June 30, 2003, defendants and others

generated sales in excess of $125 million.

In violation of Title 21, United States Code, Section 846.

## FORFEITURE NOTICE

70. The allegations of Count One of this Indictment are realleged and incorporated by

reference as though set forth fully herein for the purpose of alleging forfeiture to the United

States pursuant to the provisions of Title 21, United States Code, Section 853.

71. Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are hereby notified that, if convicted of the offense alleged above, the defendants shall forfeit to the United States pursuant to Title 21, United States Code, Section 853 their interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds obtained, directly or indirectly, as a result of such violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violation, including but not limited to:

**A. Conveyances**

(1)  2002 Harley Davidson V-Rod, VIN:  1HD1HAZ162K802492;

(2)  2002 Mercedes Benz E-55 AMG, VIN:  WDBJF74J32B439312;

(3)  2001 Mercedes Benz ML55, VIN:  4JGAB74E91A244010;

(4)  2003 Mercedes Benz S600V, VIN:  WDBNG76J23A327121;

(5)  1966 Ford Mustang, VIN: 6F07C317066;

(6)  2003 Aston Martin Vanquish V12, VIN:  SCFAC23313B500644;

(7)  2001 BMW 330C, VIN:  WBABS53471JU86121;

(8)  2001 BMW M5, VIN:  WBSDE93431BZ98956;

(9)  2002 Ford Excursion SUV, VIN:  1FMNU42S02EA86167;

(10)  2002 GMC Yukon Denali, VIN:  1GKFK66UX2J332269;

(11)  2002 GMC Yukon Denali, VIN:  1GKFK66U02J304822;

(12)  2002 GMC Yukon Denali, VIN:  1GKFK66U82J333212;

(13)  2003 BMW 540i, VIN:  WBADN63453GS56003;

(14)  2003 Lincoln Towncar Limousine, VIN:  1L1FM81W63Y600301;

(15)  2003 BMW X5, VIN:  5UXFA53593LV80202;

(16) 2003 Mercedes Benz ML-55 AMG, 4JGAB74E53A418514;

(17) 2003 Ford E250 Econoline Cargo Truck, VIN: 1FTNS24L43HA02758;

(18) 2003 Mercedes Benz S500V, VIN: WDBNG75J83A342627;

**B. Jewelry**

(1) 15.88 CTW WS1 Platinum 4-prong diamond tennis bracelet;

(2) 2.01 CT ME.03 3 Oval ring;

(3) 11.16 TW VS-1-2 Platinum 3-prong diamond tennis bracelet;

(4) 10.16 CTW VVS Platinum pear-shaped earrings;

(5) 30.3 CTW Emerald-cut platinum diamond tennis bracelet, VVS-1-VS-1;

(6) 1.25 CTW VS F Diamonds set in 18K gold earrings;

(7) 1.60 CTW VS1 F Diamonds set in 18K white gold earrings;

(8) Jaeger Lecoultre Duetto watch;

(9) 6.20 CTW VS F Diamond trillion-cut in platinum necklace;

(10) 6.20 CTW VS F Diamond trillion-cut in platinum necklace;

(11) 2.05 CTW BS F-H 18K Diamond baguette and marquis-cut, gold ring;

(12) 1.33 CTW VS FH Oval radiant-cut diamond ring;

(13) 2.95 CT Emerald set in a platinum ring;

(14) 2.32 CTW HS DE VS 1 Clover-shaped diamond heart necklace;

(15) 3.88 CT WS1D Emerald set in a ring;

(16) 2.42 CTW HS DF VS1, Clover-shaped diamond heart necklace;

(17) 4.51 CT Emerald set in a platinum man's ring;

(18) 5.93 CT WS2 D Diamond set in a ring;

(19)  1.40 CTW 2 Trillion-cut diamonds;

(20)  2.06 CTW Baguette, .91 CTW ring;

(21)  3 CTW VS-SI1 Platinum earrings;

(22)  15 CTW VS-SI1 F Platinum necklace;

(23)  Round 1.74CT VS2 F Stone for earrings 3.46 CTW;

(24)  Round 1.72CTSI1 F Stone for earrings;

(25)  3/4 CTW VS-SI F Platinum/18K Remount w/P/S Center;

(26)  Round 2.01ct VS2 F Round in omega;

(27)  .80 CTW VS D-F Plat OHM;

(28)  1.25 CTW VS F Platinum earrings;

(29)  8.60 CTW VS F Round & Princess WG necklace;

(30)  1/5ct I1 F White gold channel pendant;

(31)  1/5ct SI1 GH White gold fancy pendant;

(32)  Round 1.38ct VS2 F necklace;

(33)  Trilliant 1.58ct SI1 D necklace;

(34)  Trilliant 2.06ct VS2 E necklace;

(35)  Round 2.06ct VS2 F necklace;

(36)  Heart 1.04ct VS2 E ring;

(37)  Pear 1.57ct VS1 F necklace;

(38)  1.30 CTW VS DE platinum ring;

(39)  2 CZ White gold tiffany star pins;

(40)  15.88 CTW VS-SI Def Platinum 4 PRG tennis bracelet;

(41)  1.25 CTW VS F platinum earrings;

(42)  2.50 CTW VS D-F platinum earrings;

(43)  3/4 CTW SI1 FG White gold necklace;

(44)  3.80 CTW VS1-SI1 FH Platinum necklace;

(45)  ½ CTW VS De 18kt Ohm pendant;

(46)  Fancy Platinum Ohm pendant;

(47)  1.34 CTW VS1 D-F Platinum cuff links;

(48)  7 Platinum toe rings;

(49)  20" Platinum 4mm rolo chain;

(50)  .30tw SI1 FG 14K WG earrings;

(51)  3 1/4 CTW VS D-E Plat. Pearl drop earrings;

(52)  1 ½ CTW VS-SI1 F WG necklace;

(53)  Trilliant 2.51ct SI1 E;

(54)  Platinum labor custom ring;

(55)  .60ct DE VS1 Platinum tie tac;

(56)  Frank Mueller watch;

(57)  D .27tw VS DE Rd. Platinum;

(58)  D .58tw VS DF T. Bgt Platinum mounting;

(59)  1/2tw DF VS Round WG Hoop earrings;

(60)  Marquise 5.11ct IF D;

(61)  1.95 CTW VS DE BGT RD MQ Mounting for marquise;

(62)  Platinum Gents Presidential Rolex;

(63)  48.22 Heart tennis bracelet;

(64)  Frank Mueller Watch Stainless TransAmerica;

(65)  Watch Winders;

(66)  18 CTW VS DE Emerald-cut platinum bracelet;

(67)  6.24 CTW VS DE Platinum ring eternity band;

(68)  2.06ct F VS2 Princess-cut pendant;

(69)  4.08ct SI1 D Heart;

(70)  Platinum custom mounting & chain;

(71)  Platinum chain and heart setting;

(72)  4.25 ct. Emerald-cut sapphire;

## C. Real Estate Deposit

$20,000 real estate deposit with Wimbish-Riteway Realtors, Inc., for property located at

521 Ocean Blvd., Golden Beach, Florida;

## D. Piano

Baby Grand Yamaha Disklavier piano, serial # 5906545;

## E. Bank Accounts

All funds in the following bank accounts:

| Institution | Account Name | Account Number |
|---|---|---|
| Ohio Savings Bank | Anjali & Sushma Chhabra | 00650043128 |
| Ohio Savings Bank | Anjali & Sushma K. Chhabra | 00650034366 |
| SunTrust Bank, Ft. Lauderdale, Florida | Anjali & Sushma Chhabra | 678003072106 |
| SunTrust Bank, Ft. Lauderdale, Florida | Naresh & Sushma Chhabra | 436000012742 |

| Institution | Account Name | Account Number |
|---|---|---|
| SunTrust Bank, Ft. Lauderdale, Florida | USA Prescription Inc. Affiliate Account and any reserve account | 436000702676 |
| SunTrust Bank, Ft. Lauderdale, Florida | Prescription Resources, Inc. and any reserve account | 436000702684 |
| SunTrust Bank, Ft. Lauderdale, Florida | Kreating and any reserve account | 436000703621 |
| SunTrust Bank, Ft. Lauderdale, Florida | Chhabra Group LLC and any reserve account | 436000702781 |
| SunTrust Bank, Ft. Lauderdale, Florida | Merchant Services and any reserve account | 436000702722 |
| SunTrust Bank, Ft. Lauderdale, Florida | Rx Network of South Florida and any reserve account | 436000702625 |
| SunTrust Bank, Ft. Lauderdale, Florida | Metability and any reserve account | 436000703613 |
| SunTrust Bank, Ft. Lauderdale, Florida | USA Prescription and any reserve account | 436000702650 |
| SunTrust Bank, Ft. Lauderdale, Florida | Vincent K. Chhabra, or Sabina S. Faruqui | 436000013773 |
| SunTrust Bank, Ft. Lauderdale, Florida | Vincent K. Chhabra, Sabina Faruqui, or Gwendolyn Camille Pendland (Home Operating Account) | 436000013781 |
| SunTrust Bank, Ft. Lauderdale, Florida | Chhabra Family | 436000702773 |
| SunTrust Bank, Ft. Lauderdale, Florida | 1-800-Inkjets and any reserve account | 436000703770 |
| AXA Financial Inc./Equitable | Sabina S. Faruqui | 63L-027511 |
| AXA Financial Inc./Equitable | Vincent Chhabra | 63L-028816 |
| AXA Financial Inc./Equitable | Naresh C. Chhabra | 63L-027503 |
| Fifth Third Bank | ePrescribe, Inc. and any reserve account | 543684202540004 |

| Institution | Account Name | Account Number |
|---|---|---|
| Fifth Third Bank | MedPrescribe, Inc. and any reserve account | 543684202540002 |
| Fifth Third Bank | SafeWeb Medical, Inc. and any reserve account | 543684202540003 |
| Fifth Third Bank | USA Prescription, Inc. and any reserve account | 543682402540001 |
| Fifth Third Bank | USA Prescription, Inc. and any reserve account | 206420 |
| Metlife | Sushma K. Chhabra | 073516549AB |
| Metlife | Anjali Chhabra | 073562031AB |
| Metlife | Sabina Chhabra | 073562170AB |
| Metropolitan Life Insurance | Naresh C. Chhabra | 997107197UM |
| Metropolitan Life Insurance | Naresh C. Chhabra | 967305795UM |
| Metropolitan Life Insurance | Vineet K. Chhabra | 958406246UM |
| Metropolitan Life Insurance | Vineet K. Chhabra | 977508601UM |
| Solomon Smith Barney | Vincent Chhabra/VKC Consulting, LLC | 229-03758-11 390 |
| Solomon Smith Barney | Vincent Chhabra/VKC Consulting, LLC | 229-04882-15 390 |
| Solomon Smith Barney | Vincent K. Chhabra/VKC Consulting, LLC | 229-03771-14 390 |
| American Express Merchant Account | SafewebMedical, Inc., dba SafewebMedical.com and any reserve account | 4090464025 |
| American Express Merchant Account | ePrescribe Inc., dba ePrescribe.com and any reserve account | 4090464017 |
| American Express Merchant Account | Medprescribe Inc., dba Medprescribe.com and any reserve account | 4090459801 |

| Institution | Account Name | Account Number |
|---|---|---|
| American Express Merchant Account | USA Prescription Inc., dba USA Prescription.com and any reserve account | 4090464033 |
| State Bank of India | Naresh Chhabra | 0139J02555208 |
| State Bank of India | Naresh Chhabra | 0139502555205 |
| Indian Overseas Bank | Naresh Chhabra | 928214 |
| Hong Kong and Shanghai Banking Corporation, India | Naresh Chhabra | 051706547256 |
| Hong Kong and Shanghai Banking Corporation, India | Naresh Chhabra | 051706547257 |
| Hong Kong and Shanghai Banking Corporation, India | Naresh Chhabra | 051706547258 |
| Hong Kong and Shanghai Banking Corporation, India | Naresh Chhabra | 051706547260 |
| Hong Kong and Shanghai Banking Corporation, India | Naresh Chhabra | 051706547262 |
| Hong Kong and Shanghai Banking Corporation, India | Naresh Chhabra | 051706547260 |
| Leadenhall Trust, Bahamas | Vincent K. Chhabra | 59200 |
| Leadenhall Trust, Bahamas | Vincent K. Chhabra | 59200 |
| Union Bank of India | Naresh C. Chhabra | D911373491121 |
| Union Bank of India | Naresh C. Chhabra | 30702041124 |
| Discover | E Prescribe.com and any reserve account | 601101307728178 |
| Discover | Medprescribe.com and any reserve account | 601101307731636 |
| Huntington National Bank | Naresh and Sushma Chhabra | 03898660138 |

**F. Leasehold Interest**

-30-

Leasehold interest in Canadair Challenger 600 Executive Style Jet Airplane, tail number

N673TS, Serial Number 1073;

## G. Real Property

All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, more particularly described as:

(1)  Real property located at 2477 Provence Circle, Weston, Florida 33327, legally known as

lot 21, Sector 7-Parcels T, According to the Plat thereof, recorded in Plat Book 162, page 14 of the public records of Broward County, Florida; Instrument #101485152, OR BK 32379 PG 1311;

(2)  Real property located at 12809 Meadowbreeze Drive, Wellington, Florida 33414, legally known as

lot 163 Meadowland Cove - Plat No. 1 of Wellington, P.U.D. according to the plat thereof recorded in Plat Book 58 pages 9 to 11 inclusive, of the public records of Palm Beach County, Florida;

(3)  Real property located at 2449 Greenbriar Court, Weston, Florida, legally known as

Lot 65 of Sector 7 - Parcel N-1, according to the plat thereof, as recorded in Plat Book 165, at page 24 of the public records of Broward County, Florida;

(4)  Real property located at 12103 Areaca Drive, Wellington, Florida, legally known as

Pinewood East of Wellington Lot 32 Block 1;

(5)  Real property located at 10187 Windsor Way, Powell, Ohio, legally known as

Lot 1475, Wedgewood Section 2 in Delaware County, Ohio;

(6)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, more particularly described as real property located at 1485 Northpark Drive, Weston, Florida 33326, legally known as

a portion of Lot 2, Block 2, Park of Commerce, according to the plat thereof, as recorded in Plat Book 110, page 15 of the public records of Broward County, Florida, described as follows: Commencing at the Southwest Corner of said Lot 1,

-31-

Block 2; thence North 14°22'18" East, a distance of 40.20 Feet; thence continue North 14°22'18" East, a distance of 405.80 Feet; thence North 39°00'00" East, a distance of 36.00 feet- the last two courses being coincident with the West boundary of said Lot 1, Block 2, of said Park of Commerce, to the point of beginning; thence continue North 39°00'00" East, a distance of 47.79 Feet; thence North 12°35'00" East, a distance of 239.67 Feet; thence South 82°44'50" East, a distance of 140.55 Feet; thence South 07°15'10" West, a distance of 38.00 Feet; thence South 82°44'50" East, a distance of 140.00 Feet; thence South 07°15'10" West, a distance of 75.47 feet; thence North 82°44'50" West, a distance of 115.00 Feet; thence South 07°15'10" West, a distance of 200.43 feet; thence North 83°39'39" West, a distance of 25.29 Feet; thence North 58°39'02" West, a distance of 32.54 Feet; thence North 83°21'46" West, a distance of 99.00 Feet; thence North 06°38'13" East, a distance of 6.93 feet; thence North 83°21'46" West, a distance of 31.29 Feet; thence North 51°00'00" West to the point of beginning. Said lands situate in Broward County, Florida, containing 62,673 square feet, or 1.44 Acres, more or less;

## H. Web Sites

All interest in and control over the following websites, including the registration of the domain names:

www.rxclinic.com;

www.eprescribe.com;

www.privacyrx.com;

www.choicerx.com;

www.rxleader.com;

www.medprescribe.com;

www.clickprescribe.com;

www.usaprescription.com;

www.selectpharmacy.com;

www.safewebmedical.com;

www.medicineshelf.com;

www.clickmeds.com;

www.metability.com;

wherever registered. Property affiliated with forfeiture of the websites includes, but is not

limited to, all computers and related electronic devices, contents, data, information, stored

electronic communications, code used to generate and process data and other files, in any format

whether physical or electronic, including backups, printouts, and unpublished drafts, which

comprise or are used in the preparation and presentation of the websites listed above, regardless

of the geographic location of the aforementioned contents;

**I. Licenses**

(1)  All DEA registrations and all medical licenses in the name of WILLIAM D. THOMPSON;

(2)  All DEA registrations and all medical licenses in the name of DANIEL L. THOMPSON;

(3)  All DEA registrations and all medical licenses in the name of LAURENCE L.

COCKERILLE, JR.;

(4)  All DEA registrations and all medical licenses in the name of ARTURO L. PORTALES;

(5)  All DEA registrations and all medical licenses in the name of RUSSELL A. JOHNSON;

(6)  All DEA registrations and all pharmacy licenses in the name of DANIEL M. VARALLI;

**J. Money Judgment**

A sum of money equal to at least $125,000,000 in United States currency, representing the

amount of proceeds obtained as a result of the conspiracy to violate the Controlled Substances

Act, for which the defendants are jointly and severally liable.

72.  Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit

-33-

substitute property, up to the value of the amount described in paragraph 71, if, by any act or omission of the defendant, the property described in paragraph 71, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.  The property subject to forfeiture as substitute assets includes, but is not limited to, the following:

**A.  Real Property:**

All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, more particularly described as:

(1)  10225 Smith Road, Litchfield, OH  44253;

(2)  12513 Inverness Drive, Chester, VA  23836;

(3)  2529 Sungale Court, Lexington, KY  40513;

(4)  1102 Wildflower Lane,  St. Charles, MO  63301;

(5)  718 Debra Lane, Salem, VA  24153;

(6)  5113 Great Oaks Pkwy., Cleveland, OH  44131;

**B.  Vehicles:**

(1)  1989 Jeep Cherokee Pioneer, VIN: 1J4FJ38L6KL616398;

(2)  1982 Mercedes-Benz 240D Sedan, VIN:  WDBAB23A0CB306394;

(3)  2000 Ford Expedition (Eddie Bauer),VIN:  1FMPU18L2YLA14592;

(4)  2002 GMC Yukon Denali, VIN:  1GKEK63U12J120537;

(5)  1994 Nissan Quest,  VIN:  4N2DN11W8RD811074;

(6) 2001 Lexus GS430, VIN: JT8BL69S410001871;

(7) 1992 Mazda 929, VIN: JM1HD4613N0102527;

(8) 1997 BMW M3 (2dr Coupe), VIN: WBSBG9329VEY77112.

## COUNT 2
### (Continuing Criminal Enterprise)

73. The factual allegations of paragraphs 1 through 72 above are realleged and incorporated herein by reference.

74. Beginning in or before December, 1998, the exact date being unknown, and continuing until the date of the Indictment, in the Eastern District of Virginia and elsewhere,

### VINCENT K. CHHABRA,

defendant herein, knowingly and intentionally engaged in a continuing criminal enterprise in that the defendant did knowingly and intentionally violate Title 21, United States Code, Sections 841, 843(b), and 846, such violations including, but not limited to those violations alleged in Count 1 and Counts 3 through 42 of this Indictment, which Counts are realleged and incorporated herein by reference as though fully set forth in this Count, and did commit other violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., undertaken by defendant, in concert with at least five other persons with respect to whom the defendant occupied the position of organizer, supervisor, and any other management position, and from which continuing series of violations the defendant obtained substantial income and resources.

In violation of Title 21, United States Code, Section 848(c) and 848(a), and Title 18, United States Code, Section 2.

### FORFEITURE NOTICE

75. The allegations of Count 2 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Section 853.

76. Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is hereby notified that, if convicted of any of the offenses alleged in Count 2, defendant shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, his interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds obtained, directly or indirectly, as a result of such violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violation. Such property shall include, but not be limited to, all items and property set forth above in paragraph 71.

77. Pursuant to Title 21, United States Code, Section 853(p), defendant shall forfeit substitute property, up to the value of the amount described in paragraph 76, if, by any act or omission of the defendant, the property described in paragraph 76, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. The property subject to forfeiture as substitute assets includes, but is not limited to, the items described in paragraph 72 above.

## COUNTS 3 THROUGH 42
### (Unlawful distribution and dispensing of controlled substances)

78. The factual allegations in paragraphs 1-77 of the Indictment are incorporated by reference and realleged as though fully set forth herein.

-36-

79. On or about the dates listed below, in the Eastern District of Virginia and elsewhere,

**VINCENT K. CHHABRA (Counts 3-42),**
**DANIEL L. THOMPSON (Counts 3, 8, 26, 30, 34),**
**SABINA S. FARUQUI (Counts 3-42),**
**SUNIL K. SETHI (Counts 4-6, 8-26, 28-38),**
**JAMES A. TROVATO, JR. (Counts 5, 10-11, 13, 15, 18, 20, 24, 31),**
**DANIEL M. VARALLI (Counts 8-11, 28, 31, 34-35),**
**WILLIAM D. THOMPSON (Counts 4, 9, 12, 23, 25, 29, 32-33, 35-36),**
**LAURENCE L. COCKERILLE, JR. (Counts 5, 18, 20, 24),**
**ARTURO L. PORTALES (Counts 6-7, 14, 19, 22, 27-28, 37-42), and**
**RUSSELL A. JOHNSON (Counts 6, 16-17, 19, 21, 37-38),**

defendants herein, knowingly and intentionally, distributed and dispensed, and caused to be

distributed and dispensed, a quantity of a controlled substance for other than a legitimate medical

purpose and not in the usual course of professional practice, as charged in the chart below, each

such instance being a separate count of the Indictment:

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 3 | VINCENT K. CHHABRA, DANIEL L. THOMPSON SABINA S. FARUQUI | 01/19/99 | 90 Phentermine 30 mg tablets distributed and dispensed to B.C. in Arlington, Virginia |
| 4 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 11/24/99 | 90 Phentermine 37.5 mg tablets distributed and dispensed to B.C. in Arlington, Virginia |
| 5 | VINCENT K. CHHABRA, SABINA S. FARUQUI, JAMES A. TROVATO, JR., LAURENCE L. COCKERILLE, JR., SUNIL K. SETHI | 06/16/00 | 90 Adipex 37.5 mg tablets distributed and dispensed to B.C. in Arlington, Virginia |
| 6 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES, RUSSELL A. JOHNSON, SUNIL K. SETHI | 07/06/00 | 90 Phentermine 30 mg tablets distributed and dispensed to B.C. in Washington, D.C. |
| 7 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES | 10/31/00 | 90 Phentermine 30 mg tablets distributed and dispensed to B.C. (as F.C.) in Arlington, Virginia |

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 8 | VINCENT K. CHHABRA, SABINA S. FARUQUI, DANIEL L. THOMPSON, DANIEL M. VARALLI, SUNIL K. SETHI | 08/06/99 | 30 Phentermine 30 mg tablets distributed and dispensed to C.R. in Bealeton, Virginia |
| 9 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, DANIEL M. VARALLI, SUNIL K. SETHI | 08/19/99 | 30 Phentermine 30 mg tablets distributed and dispensed to C.R. in Bealeton, Virginia |
| 10 | VINCENT K. CHHABRA, SABINA S. FARUQUI, JAMES A. TROVATO, JR. DANIEL M. VARALLI, SUNIL K. SETHI | 08/23/99 | 30 Adipex 37.5 mg tablets distributed and dispensed to C.R. in Bealeton, Virginia |
| 11 | VINCENT K. CHHABRA, SABINA S. FARUQUI, JAMES A. TROVATO, JR., DANIEL M. VARALLI, SUNIL K. SETHI | 08/27/99 | 90 Adipex 37.5 mg tablets distributed and dispensed to C.R. in Bealeton, Virginia |
| 12 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 10/18/99 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in Plainview, New York |
| 13 | VINCENT K. CHHABRA, SABINA S. FARUQUI, JAMES A. TROVATO, JR., SUNIL K. SETHI | 10/18/99 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in Plainview, New York |
| 14 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES, SUNIL K. SETHI | 01/03/00 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. (as P.G.) in Plainview, New York |
| 15 | VINCENT K. CHHABRA, SABINA S. FARUQUI, JAMES A. TROVATO, JR., SUNIL K. SETHI | 02/02/00 | 90 Phentermine 37.5 mg tablets distributed and dispensed to P.H. in Plainview, New York |
| 16 | VINCENT K. CHHABRA, SABINA S. FARUQUI, RUSSELL A. JOHNSON, SUNIL K. SETHI | 02/10/00 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in Plainview, New York |
| 17 | VINCENT K. CHHABRA, SABINA S. FARUQUI, RUSSELL A. JOHNSON, SUNIL K. SETHI | 02/23/00 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in Plainview, New York |
| 18 | VINCENT K. CHHABRA, SABINA S. FARUQUI, LAURENCE L. COCKERILLE, JR. JAMES A. TROVATO, JR., SUNIL K. SETHI | 07/03/00 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in New York, New York |

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 19 | VINCENT K. CHHABRA, SABINA S. FARUQUI, RUSSELL A. JOHNSON, ARTURO L. PORTALES, SUNIL K. SETHI | 07/06/00 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in New York, New York |
| 20 | VINCENT K. CHHABRA, SABINA S. FARUQUI, LAURENCE COCKERJLLLE, JR. JAMES A. TROVATO, JR., SUNIL K. SETHI | 07/14/00 | 90 Phentermine 30 mg tablets distributed and dispensed to P.H. in New York, New York |
| 21 | VINCENT K. CHHABRA, SABINA S. FARUQUI, RUSSELL A. JOHNSON, SUNIL K. SETHI | 12/19/99 | 30 Phentermine 30 mg tablets distributed and dispensed to S.C. in Rockville, Maryland |
| 22 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES, SUNIL K. SETHI | 04/18/00 | 30 Phentermine 30 mg tablets distributed and dispensed to S.C. in Rockville, Maryland |
| 23 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 05/09/00 | 90 Phentermine 30 mg tablets distributed and dispensed to S.C. in Rockville, Maryland |
| 24 | VINCENT K. CHHABRA, SABINA S. FARUQUI, LAURENCE L. COCKERILLE, JR., JAMES A. TROVATO, JR. SUNIL K. SETHI | 06/28/00 | 30 Phentermine 30 mg tablets distributed and dispensed to S.C. in Rockville, Maryland |
| 25 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 06/27/00 | 90 Adipex-P 37.5 mg tablets distributed and dispensed to B.B. in Bellaire, TX |
| 26 | VINCENT K. CHHABRA, SABINA S. FARUQUI, DANIEL L. THOMPSON, SUNIL K. SETHI | 05/05/99 | 90 Phentermine 30 mg tablets distributed and dispensed to K.S. in Washington, DC |
| 27 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES | 09/25/00 | 30 Bontril 105 mg tablets distributed and dispensed to K.S. in Warrenton, Virginia |
| 28 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES, DANIEL M. VARALLI, SUNIL K. SETHI | 01/03/00 | 90 Bontril 105 mg tablets distributed and dispensed to K.S. in Warrenton, Virginia |
| 29 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 07/10/00 | 90 Bontril 105 mg tablets distributed and dispensed to K.S. in Port Republic, Maryland |

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 30 | VINCENT K. CHHABRA, SABINA S. FARUQUI, DANIEL L. THOMPSON, SUNIL K. SETHI | 04/23/99 | 30 Phentermine 30 mg tablets distributed and dispensed to E.H. in King of Prussia, Pennsylvania |
| 31 | VINCENT K. CHHABRA, SABINA S. FARUQUI, DANIEL M. VARALLI, JAMES A. TROVATO, JR., SUNIL K. SETHI | 09/28/99 | 90 Phentermine 30 mg tablets distributed and dispensed to E.H. in Collegeville, Pennsylvania |
| 32 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 11/16/99 | 30 Phentermine 30 mg tablets distributed and dispensed to E.H. in King of Prussia, Pennsylvania |
| 33 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 12/03/99 | 30 Phentermine 30 mg tablets distributed and dispensed to E.H. in King of Prussia, Pennsylvania |
| 34 | VINCENT K. CHHABRA, SABINA S. FARUQUI, DANIEL L. THOMPSON, DANIEL M. VARALLI, SUNIL K. SETHI | 07/08/99 | 90 Phentermine 30 mg tablets distributed and dispensed to S.D. in Orlando, Florida |
| 35 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, DANIEL M. VARALLI, SUNIL K. SETHI | 03/01/00 | 30 Phentermine 30 mg tablets distributed and dispensed to T.S. in Alexandria, Virginia |
| 36 | VINCENT K. CHHABRA, SABINA S. FARUQUI, WILLIAM D. THOMPSON, SUNIL K. SETHI | 03/29/00 | 30 Meridia 10 mg. tablets distributed and dispensed to A.D. in Alexandria, Virginia |
| 37 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES, RUSSELL A. JOHNSON, SUNIL K. SETHI | 04/20/00 | 30 Meridia 10 mg capsules distributed and dispensed to R.W. in Auxvasse, Missouri |
| 38 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES, RUSSELL A. JOHNSON, SUNIL K. SETHI | 06/13/00 | 30 Meridia 10 mg capsules distributed and dispensed to K.M. in London, United Kingdom |
| 39 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES | 11/06/00 | 90 Phentermine 30 mg tablets distributed and dispensed to N.V. in Alexandria, Virginia |
| 40 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES | 11/13/00 | 90 Phentermine 30 mg tablets distributed and dispensed to S.Y. in Alexandria, Virginia |

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 41 | VINCENT K. CHHABRA, SABINA F. FARUQUI, ARTURO L. PORTALES | 11/15/00 | 30 Adipex 37.5 mg tablets distributed and dispensed to A.T. in Woodbridge, Virginia |
| 42 | VINCENT K. CHHABRA, SABINA S. FARUQUI, ARTURO L. PORTALES | 11/16/00 | 90 Phentermine 30 mg tablets distributed and dispensed to M.A. in Chesapeake, Virginia |

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), 841(b)(2); Title 18, United States Code, Section 2; and Title 21, Code of Federal Regulations, Section 1306.04.

## FORFEITURE NOTICE

80.  The allegations of Counts 3 through 42 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Section 853.

81.  Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are hereby notified that, if convicted of any of the offenses alleged in Counts 3 through 42 above, each defendant convicted shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, his or her interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds obtained, directly or indirectly, as a result of such violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violation. Such property shall include, but not be limited to, all items and property set forth above in paragraph 71.

82.  Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 81 if, by any act or omission of the defendant, the property described in paragraph 81, or any portion thereof,

-41-

cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited

with a third party; has been placed beyond the jurisdiction of the Court; has been substantially

diminished in value; or has been commingled with other property which cannot be divided

without difficulty. The property subject to forfeiture as substitute assets includes, but is not

limited to, the items described in paragraph 72 above.

**COUNT 43**
**(Conspiracy to Launder Money)**

83. Beginning in or before December, 1998, the exact date being unknown, and

continuing until on or about the date of this Indictment, in the Eastern District of Virginia and

elsewhere,

**VINCENT K. CHHABRA,**
**SABINA S. FARUQUI,**
**SUNIL K. SETHI,**
**USA PRESCRIPTION, INC.,**
**CHHABRA GROUP, LLC, and**
**VKC CONSULTING, LLC,**

defendants herein, did knowingly combine, conspire, confederate and agree, together, and with

others known and unknown to the Grand Jury, to commit certain offenses under Title 18, United

States Code, Sections 1956 and 1957, as follows:

(a) to conduct and attempt to conduct financial transactions affecting interstate and

foreign commerce, described below, which transactions involved the proceeds of specified

unlawful activity, to wit, the illegal distribution and dispensing of controlled substances, in

violation of Title 21, United States Code, Sections 841(a), 843(b), 846, and 848(c), with the

intent to promote the carrying on of such specified unlawful activity and that while conducting

and attempting to conduct such financial transactions, knew that the property involved in the

-42-

financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b) to knowingly engage and attempt to engage in monetary transactions by, through, and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the illegal distribution and dispensing of controlled substances, in violation of Title 21, United States Code, Sections 841(a), 843(b), 846, and 848(c) and in violation of Title 18, United States Code, Section 1957.

## OBJECT OF THE CONSPIRACY

84. The object of the conspiracy was for the conspirators to obtain large quantities of funds, thereby enriching themselves, in exchange for distributing and dispensing controlled substances for other than a legitimate medical purpose and not in the usual course of professional practice.

## MANNER AND MEANS

85. It was part of the money laundering conspiracy that:

(a) defendants solicited and serviced customers seeking to obtain controlled substances in the manner set out in paragraphs 1-84 above;

(b) defendants charged their customers fees for the cost of controlled substances illegally distributed and dispensed, for shipping of those drugs, and sometimes for the review of a customer's order form by a physician, knowing that the payment of those fees constituted the proceeds of unlawful activity;

(c) after receiving funds in payment of the fees charged to the customers,

-43-

defendants caused the funds to be deposited into bank accounts of the various entities and individuals involved in the conspiracy;

(d)  defendants then caused transfers of money from those bank accounts for the purpose of paying the expenses incurred to conduct the unlawful drug sales, such as shipping bills, wholesale prescription drug bills, pharmacy dispensing bills, rent, and employee salaries, with the intent to further promote the ongoing unlawful drug sales; and

(e)  after receiving funds from sales of illegally prescribed drugs, defendants caused the funds to be deposited into bank accounts from which they transferred the funds in amounts greater than $10,000.

## OVERT ACTS

86.  In furtherance of the conspiracy and to effect its aims and objects, one or more of the co-conspirators committed or caused to be committed at least one of the following overt acts in the Eastern District of Virginia and elsewhere:

(a)  On or about April 22, 1999, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $10,000 from the DVM Enterprises account number 133010988 at F&M Bank in Richmond, Virginia, to be sent to the Next Generation Health Systems, Inc. account number 1891753581 at Huntington National Bank in Ohio.

(b)  On or about June 30, 1999, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $19,000 from the DVM Enterprises account number 133010988 at F&M Bank in Richmond, Virginia, to be sent to an account at National City Bank in Ohio in the name of FMEW, Inc., that was controlled by defendant DANIEL L. THOMPSON.

(c)  On or about October 20, 1999, defendant VINCENT K. CHHABRA caused a wire

-44-

transfer in the amount of $40,000 from the SV Enterprises LLC account number 143011666 at F&M Bank in Richmond, Virginia, to be sent to the RxClinic LLC bank account number 036004679 at a bank in Ohio.

(d) On or about April 13, 2000, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $119,000 from the SV Enterprises LLC account number 143011666 at F&M Bank in Richmond, Virginia, to be sent to the RxClinic LLC bank account number 036004679 at a bank in Ohio.

(e) On or about April 24, 2000, defendant SUNIL K. SETHI wrote check number 1358 in the amount of $92,529.71 on the 2U-Netmail LLC account number 133010961 at F&M Bank in Richmond, Virginia, to RxDirect.

(f) On or about May 10, 2000, defendant SUNIL K. SETHI issued a check in the amount of $4,835, from the SV Enterprises (doing business as Safeweb.com) account number 143011968 at F&M Bank in Richmond, Virginia, to defendant RUSSELL A. JOHNSON.

(g) On or about May 30, 2000, defendant VINCENT K. CHHABRA issued check number 102 drawn on the VKC Consulting, LLC, money market account number 0055310153 at BankAtlantic in Florida, in the amount of $95,000 to an individual as a deposit for a condominium located at #603, 9601 Collins Avenue, Bal Harbour, Florida.

(h) On or about June 23, 2000, defendant VINCENT K. CHHABRA purchased ten $100,000 cashier's checks made payable to an unindicted co-conspirator using funds from the MVC Holdings Ltd. account number 039000872 at United Midwest Savings Bank in Ohio. Thereafter, the checks were transacted at various banks in India.

(i) On or about July 27, 2000, defendant SUNIL K. SETHI caused the transfer of

$73,240.09 from the 2U-Netmail account number 133010961 at F&M Bank in Richmond, Virginia, to a pharmaceutical drug wholesaler in California.

(j)  On or about October 17, 2000, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $240,000 from the ePrescribe, Inc. account number 55379885 at BankAtlantic in Florida, to an account in Alabama, to pay a pharmacy in Daphne, Alabama, that distributed and dispensed drugs to defendants' website customers.

(k)  On or about November 27, 2000, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $371,000 from ePrescribe, Inc. account number 55379885 at BankAtlantic in Florida, to an account in Alabama, to pay a pharmacy in Daphne, Alabama, that distributed and dispensed drugs to defendants' website customers.

(l)  On or about December 6, 2000, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $2,000,000 to be sent from VKC Consulting, LLC, money market account number 55310153 at BankAtlantic in Florida, to an individual in the Bahamas.

(m)  On or about December 15, 2000, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $1,015,622.50 to be sent from VKC Consulting, LLC, money market account number 55310153 at BankAtlantic in Florida, to a company in Oklahoma City, Oklahoma to complete payment for a Cessna Citation airplane.

(n)  On or about April 23, 2001, defendant VINCENT K. CHHABRA issued check number 1403 in the amount of $84,177.39 drawn on the account of VKC Consulting, LLC, account number 0055327074 at BankAtlantic in Florida, to an automobile dealer in Florida, for the purchase of a 2001 BMW M5 automobile for defendant SABINA S. FARUQUI.

(o)  On or about April 26, 2001, defendant VINCENT K. CHHABRA issued check

-46-

number 1405 in the amount of $626,901.62 drawn on the account of VKC Consulting, LLC, account number 0055327074 at BankAtlantic in Florida, to a company in Florida for the lease of a Lockheed Jetstar II airplane.

(p)  On or about June 11, 2001, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $261,288.22 to be sent from USA Prescription, Inc., account number 0055379893 at BankAtlantic in Florida, to a company in Florida for the purchase of a 2001 Mercedes Benz automobile and for two lease payments on the Jetstar II airplane.

(q)  On or about July 20, 2001, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $145,000 to be sent from the USA Prescription, Inc., account number 0055379893 at BankAtlantic in Florida, to a company in Florida, for the purchase of a 2001 Porsche 911 Turbo automobile.

(r)  On or about August 30, 2001, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $250,000 to be sent from the MVC Holdings, Ltd. account number 2005233018 at City National Bank in Florida, to a casino in Las Vegas, Nevada.

(s)  On or about August 30, 2001, defendant VINCENT K. CHHABRA purchased ten $100,000 cashier's checks made payable to an unindicted co-conspirator using funds from the MVC Holdings, Ltd. account 2005233018 at City National Bank in Florida.  An unindicted co-conspirator negotiated these checks at six different banks in Florida and in Ohio.

(t)  On or about September 21, 2001, defendant VKC CONSULTING, LLC, caused a wire transfer in the amount of $140,000 to be sent from the VKC Consulting, LLC, account number 0055327074 at BankAtlantic in Florida, to a jewelry store in Ohio, as payment for jewelry.

-47-

(u)  On or about November 8, 2001, defendant VINCENT K. CHHABRA issued check number 3606 in the amount of $271,020.09 drawn on the USA Prescription, Inc., account number 0055379893 at BankAtlantic in Florida, to a company in Florida, in partial payment on a Canadair Challenger 600 airplane.

(v)  On or about November 27, 2001, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $123,500 to be sent from the USA Prescription, Inc., account number 0055379893 at BankAtlantic in Florida, to a jewelry store in Ohio, in payment for jewelry.

(w)  On or about December 5, 2001, defendant VKC CONSULTING, LLC, caused a wire transfer in the amount of $141,000 to be sent from VKC Consulting, LLC, account number 2005698776 at City National Bank in Florida, to a company in Florida, for the purchase of a 2002 Mercedes Benz, S-600 Sport AMG vehicle.

(x)  On or about December 19, 2001, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $125,000, to be sent from the VKC Consulting, LLC, account number 2005698789 at City National Bank in Florida, to an automobile dealer in Oxnard, California, in partial payment for a specially-equipped 2002 Ford Excursion.

(y)  On or about February 15, 2002, defendant VINCENT K. CHHABRA issued check number 1003 in the amount of $31,475.14 drawn on the account of VKC Consulting, LLC, account number 2005698789 at City National Bank in Florida, to a motorcycle dealer in Ft. Lauderdale, Florida to purchase two Harley Davidson motorcycles.

(z)  On or about March 15, 2002, defendants VINCENT K. CHHABRA and SABINA S. FARUQUI, acting as President and General Manager, respectively, caused to be opened a bank account in the name of USA Prescription Inc. Merchant Services, account number

-48-

0436000702722, at SunTrust Bank in Florida, and were the sole signatories on the accounts.

(aa) On or about March 21, 2002, defendants VINCENT K. CHHABRA and SABINA S. FARUQUI caused to be opened bank accounts in the name of Chhabra Group, LLC, account number 0436000702781, and Chhabra Group, LLC Payroll Account, account number 0436000702790, at SunTrust Bank in Florida, and were the sole signatories on the accounts.

(bb) On or about April 8, 2002, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $50,000 to be sent from the Chhabra Group, LLC, account number 0436000702781, at SunTrust Bank in Florida, to an automobile dealer in Oxnard, California, in partial payment for a specially-equipped 2002 Ford Excursion.

(cc) On or about April 18, 2002, defendant VINCENT K. CHHABRA caused a wire transfer in the amount of $41,019 to be sent from the Chhabra Group, LLC, account number 0436000702781 at SunTrust Bank in Florida, to an automobile dealer in Oxnard, California, in partial payment for a specially-equipped 2002 Ford Excursion.

(dd) On or about April 26, 2002, defendant SABINA S. FARUQUI caused a wire transfer in the amount of $50,000 to be sent from the Chhabra Group, LLC, account number 0436000702781 at SunTrust Bank in Florida, to an automobile dealer in Virginia in partial payment for a 2003 Mercedes Benz SL500R automobile.

(ee) On or about April 26, 2002, defendant SABINA S. FARUQUI caused a wire transfer in the amount of $54,122.44 from Chhabra Group, LLC, account number 0436000702781 at SunTrust Bank in Florida, to be sent to an automobile dealer in Virginia, in partial payment for a 2003 Mercedes Benz SL500R automobile.

(ff) On or about May 24, 2002, defendant VINCENT K. CHHABRA caused a wire

transfer in the amount of $332,191.41 to be sent from Chhabra Group, LLC, account number 0436000702781 at SunTrust Bank in Florida, to a company in Florida, for the purchase of a 1966 Ford Mustang automobile, a 2002 Mercedes Benz E55 automobile and for lease and management payments on the Canadair Challenger 600 airplane.

(gg)  On or about August 16, 2002, defendant VINCENT K. CHHABRA issued check number 534 from the Home Operating Account, account number 0436000013781 at SunTrust Bank in Florida to an automobile dealer in Florida, in the amount of $148,000, for the purchase of three 2002 GMC Yukon Denali trucks.

(hh)  On or about March 7, 2003, defendant SABINA S. FARUQUI issued check number 003240 from the Chhabra Group, LLC, account number 043600702781 at SunTrust Bank in Florida to an automobile dealer in Florida, in the amount of $105,470.70 for the purchase of a 2003 Mercedes Benz S500V automobile.

In violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE NOTICE

87.  The allegations of Count 43 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982.

88.  Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are hereby notified that, if convicted of the offense alleged above, each convicted defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

(a)  All right, title, and interest in any and all property involved in the conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956, and all

property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956; (2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and (3) all property used in any manner or part to commit or to facilitate the commission of those violations. Such property shall include, but not be limited to, all items and property set forth above in paragraph 71.

(b) A sum of money equal to the total amount of money involved in the conspiracy to commit money laundering. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

89. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each convicted defendant shall forfeit substitute property, up to the value of the amount described in paragraph 88, if, by any act or omission of the defendant, the property described in paragraph 88, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. The property subject to forfeiture as substitute assets includes, but is not limited to, the items described in paragraph 72 above.

All in accordance with Title 18, United States Code, Section 982(a)(1) and (b), and Rule 32.2(a), Federal Rules of Criminal Procedure.

## COUNTS 44 THROUGH 82
### (Promotional Money Laundering)

90. The allegations in Paragraphs 1 through 89 are realleged and incorporated by reference.

91. From on or about March 1999 through at least 2000, defendants maintained bank accounts at F&M Bank in Richmond, Virginia, in the names and with the account numbers as charged in the chart below, which accounts were used to receive funds from sales of illegally distributed and dispensed controlled substances.

92. From on or about March 1999 through at least 2000, funds from these bank accounts were used to pay expenses of the illegal drug scheme.

93. On or about the dates enumerated as to each count, in the Eastern District of Virginia, and elsewhere,

### VINCENT K. CHHABRA,
### SABINA S. FARUQUI, and
### SUNIL K. SETHI,

defendants herein, knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, in the approximate amounts set forth below, which involved the proceeds of specified unlawful activity, that is the illegal distributing and dispensing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846, with the intent to promote the carrying on of the specified unlawful activity, and while conducting and attempting to conduct such financial transactions knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity; that is, the defendants, aiding and abetting one another, caused monies that had been paid to the defendants

-52-

for controlled substances defendants had illegally distributed and dispensed through websites controlled by the defendants to be transferred to the payees set forth below, to promote the unlawful activity:

| Count | Date | Amount | Payee | Bank Account |
|-------|------|--------|-------|--------------|
| 44 | 05/20/99 | $11,672.00 | QS/1 Data Systems | 2U-Netmail, Acct. No. 0133010961 |
| 45 | 05/24/99 | $ 3,000.00 | William Thompson | DVM Enterprises, Acct. No. 0133010988 |
| 46 | 06/01/99 | $20,261.55 | HPS Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 47 | 06/04/99 | $30,628.83 | HPS Rx Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 48 | 06/10/99 | $ 4,733.21 | UPS | 2U-Netmail, Acct. No. 0133010961 |
| 49 | 06/30/99 | $19,000.00 | FMEW | DVM Enterprises, Acct. No. 0133010988 |
| 50 | 06/30/99 | $ 2,000.00 | William Thompson | DVM Enterprises, Acct. No. 0133010988 |
| 51 | 08/17/99 | $24,643.65 | Rx Direct, Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 52 | 08/31/99 | $35,677.23 | Rx Direct, Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 53 | 09/09/99 | $37,488.85 | Rx Direct, Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 54 | 10/29/99 | $28,230.90 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 55 | 11/29/99 | $30,803.19 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 56 | 12/31/99 | $26,841.50 | Sunil Sethi | 2U-Netmail, Acct. No. 0133010961 |
| 57 | 01/19/00 | $56,081.91 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 58 | 02/04/00 | $ 8,870.00 | Sunil Sethi | 2U-Netmail, Acct. No. 0133010961 |
| 59 | 02/14/00 | $22,465.07 | Rx Direct | 2U-Netmail, Acct. No. 0133010961 |
| 60 | 03/06/00 | $48,305.75 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 61 | 03/10/00 | $ 5,000.00 | Dr. Russell A. Johnson | 2U-Netmail, Acct. No. 0133010961 |
| 62 | 03/12/00 | $58,236.39 | Rx Direct | 2U-Netmail, Acct. No. 0133010961 |
| 63 | 04/03/00 | $54,494.50 | McKesson | 2U-Netmail, Acct. No. 0133010961 |

| Count | Date | Amount | Payee | Bank Account |
|-------|------|--------|-------|--------------|
| 64 | 04/24/00 | $92,529.71 | RxDirect | 2U-Netmail, Acct. No. 0133010961 |
| 65 | 04/24/00 | $56,951.86 | Federal Express | 2U-Netmail, Acct. No. 0133010961 |
| 66 | 05/01/00 | $82,783.68 | RxDirect | 2U-Netmail, Acct. No. 0133010961 |
| 67 | 05/04/00 | $58,565.74 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 68 | 05/10/00 | $ 4,835.00 | Dr. Russell Johnson | SV Enterprises dba Safeweb.com, Acct. No. 0143011968 |
| 69 | 05/21/00 | $59,467.57 | Rx Direct | 2U-Netmail, Acct. No. 0133010961 |
| 70 | 05/24/00 | $35,227.86 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 71 | 06/26/00 | $67,354.90 | Rx Direct, Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 72 | 07/07/00 | $23,416.50 | Superior Drugs | 2U-Netmail, Acct. No. 0133010961 |
| 73 | 07/10/00 | $79,669.44 | Federal Express | 2U-Netmail, Acct. No. 0133010961 |
| 74 | 07/18/00 | $65,197.07 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 75 | 07/18/00 | $23,416.50 | Superior Drugs | 2U-Netmail, Acct. No. 0133010961 |
| 76 | 07/18/00 | $35,161.24 | A.F. Hauser | 2U-Netmail, Acct. No. 0133010961 |
| 77 | 07/18/00 | $44,400.00 | River City Drug | 2U-Netmail, Acct. No. 0133010961 |
| 78 | 07/18/00 | $50,000.00 | Rx Direct, Inc. | 2U-Netmail, Acct. No. 0133010961 |
| 79 | 07/26/00 | $79,504.41 | A.F. Hauser | 2U-Netmail, Acct. No. 0133010961 |
| 80 | 07/27/00 | $73,240.09 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 81 | 08/09/00 | $26,708.10 | McKesson | 2U-Netmail, Acct. No. 0133010961 |
| 82 | 08/11/00 | $30,046.62 | McKesson | 2U-Netmail, Acct. No. 0133010961 |

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## FORFEITURE NOTICE

94. The allegations of Counts 44 through 82 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982.

95. Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are hereby notified that, if convicted of any of the offenses alleged above in Counts 44 through 82, each convicted defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

(a) All right, title, and interest in any and all property involved in the money laundering offense, in violation of Title 18, United States Code, Section 1956, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956; (2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and (3) all property used in any manner or part to commit or to facilitate the commission of those violations.

(b) A sum of money equal to the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

96. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each convicted defendant shall forfeit substitute property, up to the value of the amount described in paragraph 95, if, by any act or omission of the defendant, the property described in paragraph 95, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. The property subject to forfeiture as substitute assets includes, but is not limited to, the items described in

paragraph 72 above.

All in accordance with Title 18, United States Code, Section 982(a)(1) and (b), and Rule 32.2(a), Federal Rules of Criminal Procedure.

### COUNTS 83 THROUGH 99
**(Transactional Money Laundering)**

97. The allegations in Paragraphs 1 through 96 are realleged and incorporated by reference.

98. From on or about March 1999 through at least June 2001, defendants maintained bank accounts in the names and with the account numbers as charged in the chart below, which accounts were used to receive funds from sales of illegally distributed and dispensed controlled substances.

99. On or about the dates set forth below, in the Eastern District of Virginia,

**VINCENT K. CHHABRA, and
SUNIL K. SETHI,**

defendants herein, knowingly engaged and attempted to engage in monetary transactions, by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit into and transfer of funds out of accounts set forth in the chart below at F&M Bank in Richmond, Virginia, such property having been derived from a specified unlawful activity, that is, the illegal dispensing of controlled substances in violation of Title 21, United States Code, Sections 841(a), 843(b) and 846:

-56-

| Count | Date | Amount and Transaction | Account Transaction From | Account Transaction To |
|-------|------|------------------------|--------------------------|------------------------|
| 83 | 05/24/99 | $80,000 wire transfer | DVM Enterprises, Acct. No. 0133010988, F&M Bank, Virginia | DVM Enterprises, Acct. No. 36004604 United Midwest Savings Bank, Ohio |
| 84 | 06/10/99 | $70,000 wire transfer | DVM Enterprises Acct. No. 0133010988, F&M Bank, Virginia | DVM Enterprises, Acct. No. 36004604 United Midwest Savings Bank, Ohio |
| 85 | 07/30/99 | $44,000 wire transfer | DVM Enterprises Acct. No. 0133010988, F&M Bank, Virginia | DVM Enterprises Acct. No. 36004604, United Midwest Savings Bank, Ohio |
| 86 | 11/17/99 | $30,000.00 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | Sheraton Desert Inn, Acct. No. 990099939, Bank of America, Nevada (for Daniel Lee Thompson) |
| 87 | 01/03/00 | $12,950 check | 2U-Netmail Acct. No. 0133010961, F&M Bank, Virginia | Acct. No. 823244264, Firstar Bank, Ohio |
| 88 | 01/20/00 | $14,820 check | 2U-Netmail Acct. No. 0133010961, F&M Bank, Virginia | Acct. No. 823244264, Firstar Bank, Ohio |
| 89 | 03/23/00 | $240,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | Rxclinic, LLC, Acct. No. 36004679, United Midwest Savings Bank, Ohio |
| 90 | 04/06/00 | $260,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | Rxclinic, LLC, Acct. No. 36004679, United Midwest Savings Bank, Ohio |
| 91 | 04/18/00 | $24,940 check | 2U-Netmail Acct. No. 0133010961, F&M Bank, Virginia | Acct. No. 823244264, Firstar Bank, Ohio |
| 92 | 04/27/00 | $200,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | Rxclinic, LLC, Acct. No. 36004679, United Midwest Savings Bank, Ohio |
| 93 | 05/08/00 | $20,810 check | 2U-Netmail Acct. No. 0133010961, F&M Bank, Virginia | Acct. No. 823244264, Firstar Bank, Ohio |
| 94 | 06/02/00 | $200,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | OSI Medical Services, Inc., Acct. No. 36004216, United Midwest Savings Bank, Ohio |
| 95 | 06/09/00 | $192,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | OSI Medical Services, Inc., Acct. No. 36004216, United Midwest Savings Bank, Ohio |

| Count | Date | Amount and Transaction | Account Transaction From | Account Transaction To |
|-------|------|------------------------|--------------------------|------------------------|
| 96 | 07/20/00 | $42,200 check | 2U-Netmail Acct. No. 0133010961, F&M Bank, Virginia | Acct. No. 823244264, Firstar Bank, Ohio |
| 97 | 08/11/00 | $300,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | DVM Enterprises Operating Acct. No. 36004208, United Midwest Savings Bank, Ohio |
| 98 | 09/05/00 | $425,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | DVM Enterprises Operating Acct. No. 36004208, United Midwest Savings Bank, Ohio |
| 99 | 09/28/00 | $660,000 wire transfer | SV Enterprises, LLC, Acct. No. 143011666, F&M Bank, Virginia | DVM Enterprises Operating Acct. No. 36004208, United Midwest Savings Bank, Ohio |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE NOTICE

100. The allegations of Counts 83 through 99 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982.

101. Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are hereby notified that, if convicted of any of the offenses alleged above in Counts 83 through 99, each convicted defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

(a) All right, title, and interest in any and all property involved in the money laundering offense, in violation of Title 18, United States Code, Section 1957, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1957; (2) all commissions, fees and other property constituting proceeds obtained as a result of those

violations; and (3) all property used in any manner or part to commit or to facilitate the commission of those violations; and

(b) A sum of money equal to the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

102. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each convicted defendant shall forfeit substitute property, up to the value of the amount described in paragraph 101, if, by any act or omission of the defendant, the property described in paragraph 101, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. The property subject to forfeiture as substitute assets includes, but is not limited to, the items described in paragraph 72 above.

All in accordance with Title 18, United States Code, Section 982(a)(1) and (b), and Rule 32.2(a), Federal Rules of Criminal Procedure.

## COUNTS 100 THROUGH 108
### (Introduction of Misbranded Drugs into Interstate Commerce )

103. The factual allegations in paragraphs 1-102 of the Indictment are incorporated by reference and realleged as though fully set forth herein.

104. On or about the dates listed below, in the Eastern District of Virginia and elsewhere,

**VINCENT K. CHHABRA,**
**SABINA S. FARUQUI,**
**SUNIL K. SETHI,**
**ARTURO L. PORTALES, and**
**RUSSELL A. JOHNSON,**

defendants herein, and others known and unknown to the grand jury, with the intent to defraud

and mislead, introduced and delivered for introduction into interstate commerce and caused to be

introduced and delivered for introduction into interstate commerce, as set forth in the chart

below, prescription drugs, each such instance being a separate count of the Indictment, which

drugs were misbranded within the meaning of Title 21, United States Code, Section 352(a), to

wit, the label on the prescription drugs was false and misleading, in that the label indicated that

defendant RUSSELL A. JOHNSON authorized and caused to be authorized drugs to be

distributed and dispensed when in fact, defendant ARTURO L. PORTALES had authorized and

caused to be authorized the drugs to be dispensed.

| COUNT | DATE | PRESCRIPTION DRUGS DISTRIBUTED & DISPENSED |
|---|---|---|
| 100 | 04/20/00 | 90 Xenical 120 mg tablets distributed and dispensed to R.W. in Chicago, Illinois |
| 101 | 04/20/00 | 30 Bontril 105 mg capsules distributed and dispensed to R.W. in Chicago, Illinois |
| 102 | 04/20/00 | 30 Meridia 10 mg capsules distributed and dispensed to R.W. in Auxvasse, Missouri |
| 103 | 06/13/00 | 30 Meridia 10 mg capsules distributed and dispensed to K.M. in London, United Kingdom |
| 104 | 06/29/00 | 30 Meridia 10 mg capsules distributed and dispensed to S.A. in Dallas, Texas |
| 105 | 06/29/00 | 30 Viagra 100 mg tablets distributed and dispensed to G.H. in New Castle, Indiana |

| COUNT | DATE | PRESCRIPTION DRUGS DISTRIBUTED & DISPENSED |
|---|---|---|
| 106 | 07/06/00 | 90 Phentermine 30 mg tablets distributed and dispensed to B.C. in Washington, DC |
| 107 | 07/31/00 | 90 Xenical 120 mg tablets distributed and dispensed to L.M. in Raleigh, North Carolina |
| 108 | 07/31/00 | 30 Meridia 15 mg capsules distributed and dispensed to L.M. in Raleigh, North Carolina |

In violation of Title 21, United States Code, Sections 331(a), 333(a)(2), 352(a); and Title 18, United States Code, Section 2.

A TRUE BILL:

FOREPERSON OF GRAND JURY

Paul J. McNulty
United States Attorney

Kevin V. Di Gregory
Acting Criminal Chief
Assistant United States Attorney

Linda I. Marks
Attorney
Karen L. Taylor
Senior Trial Attorney
Mary Beth Schultz
Attorney
U.S. Department of Justice

James P. Gillis
Assistant United States Attorney

-61-